UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>RAYMOND SAENZ,<br><br>Defendant. | 3:10-CR-30027-01-RAL<br><br>**ORDER DENYING MOTION FOR RELIEF UNDER THE FIRST STEP ACT** |

In 2010 a federal grand jury indicted Raymond Saenz (Saenz) on one count of conspiracy to distribute five or more grams of methamphetamine in violation of 21 U.S.C. §§ 846 and 841(a)(1), and two counts of distribution of a mixture or substance containing a detectable amount of methamphetamine in violation of 21 U.S.C. § 841(a)(1). Doc. 1. Saenz pleaded guilty to the conspiracy charge, in exchange for the Government's promise to dismiss the remaining counts in the indictment and to not file an information pursuant to 21 U.S.C. § 851 alleging that Saenz had a prior felony drug conviction. Doc. 54. This Court conducted a sentencing hearing on November 23, 2010, and after considering the sentencing factors found in 18 U.S.C. § 3553(a) imposed a within guideline range sentence of 222 months custody with five years supervised release and a $100 special assessment. Docs. 66, 67.

In early 2020, the COVID-19 virus struck the United States and quickly spread across the country and into its correctional institutions. Saenz now moves this Court for a reduction in sentence under the First Step Act based on the COVID-19 pandemic and certain health conditions which he claims puts him at higher risk of complications if he contracts the virus. Doc. 184. The Federal Public Defenders Office has supplemented Saenz's pro se motion, and the Government

1

has responded in opposition to the motion. Docs. 189, 190, 191. This Court has reviewed Saenz's underlying file materials and the provided medical records, and for the reasons stated herein denies his motion for reduction in sentence under the First Step Act at this time.

### I. Background

Saenz pleaded guilty to a serious offense in this case, but not before negotiating a favorable plea agreement with the Government. According to the factual basis statement, Saenz and his codefendant, among other things as part of the conspiracy, made two methamphetamine sales to confidential informants. Doc. 56. During one sale, Saenz warned the confidential informant to be cautious because the methamphetamine was quite pure. Id. Upon testing, the methamphetamine received in each sale had a purity rate over 88 percent. Id. When calculated based on the weight and purity of the methamphetamine in each sale, the two sales resulted in a total of 5.1 grams of actual methamphetamine trading hands. Id. Saenz also indicated to the confidential informant that he could obtain a larger quantity of methamphetamine. Id.

Saenz's plea agreement provided him a significant benefit. Not only did the Government agree to dismiss the distribution charges associated with the confidential informant sales in exchange for his guilty plea on the conspiracy charge, it also agreed not to file an information pursuant to 21 U.S.C. § 851 alleging that he had a prior felony drug conviction. Doc. 54 at 7. In 2010, a conviction for conspiracy to distribute five grams or more of actual methamphetamine, the charge to which Saenz pleaded guilty, carried a mandatory minimum sentence of five years in custody and a statutory maximum of forty years imprisonment. 21 U.S.C. § 841(b)(1)(B). Saenz also faced a $2,000,000 fine for such a conviction. 21 U.S.C. § 841(b)(1)(B). However, the statutory penalties for this offense drastically increased if a defendant had a prior felony conviction for a drug offense. A prior felony conviction increased the mandatory minimum sentence to ten

years custody and the statutory maximum to life imprisonment with the possibility of a $4,000,000 fine. 21 U.S.C. § 841(b)(1)(B). Saenz had multiple prior convictions relating to distribution of controlled substances, both in Nebraska state court and in the United States District Court for the District of Nebraska. Presentence Investigation Report (PSR) ¶¶ 35, 37, 42 46. Each of the subsequent drug related convictions seemed to occur within only a few years after Saenz's previous release from custody. PSR at 9 –12.

Based on Saenz's extensive criminal history and the fact that the latest offense occurred while Saenz was on supervised release, he had a criminal history category of VI and was considered a career offender. PSR ¶ 50. The total offense level was calculated as a 31, which gave Saenz a guideline range of 188 to 235 months custody. PSR ¶ 88.

This Court held a sentencing hearing on November 23, 2010. It heard argument and ruled on objections to the PSR and considered the sentencing factors listed in 18 U.S.C. § 3553(a). After careful consideration, this Court concluded that a sentence of 222 months custody with five years of supervised release to follow was sufficient but not greater than necessary to address the sentencing factors found in 18 U.S.C. § 3553(a).

Saenz now is fifty years old and is currently incarcerated at Federal Correctional Institution Fort Dix (FCI Fort Dix), a low security federal correctional institution, with a projected release date of November 18, 2026. See Find an Inmate, Federal Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited July 10, 2020). According to his Bureau of Prisons (BOP) medical records, as of May 8, 2020, Saenz was currently suffering from, among other things, obesity, esophageal reflux, Barrett's esophagus, gastritis, diverticulitis, anemia, sleep apnea, abdominal pain, and a body mass index between 40.0 and 44.9. Doc. 187 at 1–2. Additionally, Saenz has undergone two surgeries in the last two years: a colon correction surgery

and a hernia repair operation. Docs. 187 at 139; 188 at 31. Saenz has also been issued a C-Pap machine for his sleep apnea. Doc. 188 at 117.

Recently, a new contagious respiratory illness, COVID-19, developed and quickly spread around the world. The illness is easily spread from person-to-person primarily between individuals who are in close proximity to one another. See Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/how-covid-spreads.html (last visited July 2, 2020). Everyone is susceptible to COVID-19, but the Centers for Disease Control and Prevention (CDC) have identified certain underlying health conditions that may make some individuals more likely to develop a severe form of the illness if they contract the virus. See People with Certain Medical Conditions, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited July 13, 2020). According to the CDC, individuals who suffer from obesity, serious heart conditions, and type 2 diabetes mellitus are at increased risk of severe illness from COVID-19, while those with hypertension or high blood pressure and type 1 diabetes mellitus might be at an increased risk of developing a severe form of the illness. Id.

COVID-19 has infiltrated FCI Fort Dix, but it has not had catastrophic effects. According to the Bureau of Prison's (BOP) reporting website, there are fifteen inmate and zero staff active infections, and twenty-five inmate and five staff have recovered from COVID-19. See COVID-19, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited July 13, 2020). The facility has reported zero inmate or staff deaths from the disease. Id.

Saenz states that he filed a compassionate release motion with the warden of FCI Fort Dix on March 26, 2020. Docs. 184 at 1; 189 at 3. On May 12, 2020, Saenz submitted another request for compassionate release to the warden of his institution. Doc. 189-1. On May 18, 2020, Saenz

4

received a response instructing him to resubmit his compassionate release request citing a specific category justifying his release. Doc. 191-2. It is unclear whether this response was to Saenz's possible March or May request. There is no additional evidence of a response by the warden of FCI Fort Dix; because Saenz is still incarcerated, it can be assumed that Saenz either received no response or was denied.

Saenz has filed a pro se motion for modification of his sentence under 18 U.S.C. § 3582(c)(1)(A) arguing that there are extraordinary circumstances created by the COVID-19 pandemic justifying his release under comment note (D) to § 1B1.13 of the Sentencing Guidelines. Doc. 184. He also asserts that the unreasonable risk of contracting COVID-19 due to the conditions of confinement at FCI Fort Dix constitutes an Eighth Amendment violation as cruel and unusual punishment. Doc. 184 at 5. The Federal Public Defender's Office (FPD) filed a supplement to Saenz's pro se motion, Doc. 189, and the Government responded in opposition, Doc. 190. The FPD replied, Doc. 191, and the matter is now fully submitted.

## II.     Legal Standard for Compassionate Release

Generally, a "court may not modify a term of imprisonment once it has been imposed," except in a few, well-defined circumstances. 18 U.S.C. § 3582(c). The compassionate release statute as amended by the First Step Act of 2018 provides one of those narrow avenues through which a sentence may be modified. The compassionate release statute provides in pertinent part that:

> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment ... after considering the factors

5

>    set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
>    (i)  extraordinary and compelling reasons warrant such a reduction; ...
>
>    and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission

18 U.S.C. § 3582(c)(1)(A). The motion before this Court was not brought by the Director of the Bureau of Prisons. Therefore, this Court may reduce Saenz's sentence only if thirty days have passed since the warden of his institution received his request for sentence reduction and (1) it considers the sentencing factors listed in 18 U.S.C. § 3553(a); (2) it finds extraordinary and compelling reasons for a sentence reduction; and (3) it finds the reduction is consistent with Sentencing Commission's applicable policy statements. See 18 U.S.C. § 3582(c)(1)(A).

**III.  Discussion**

   **A.  Timeliness**

Saenz appears to have submitted requests for compassionate release to the warden of FCI Fort Dix on March 26, 2020, and May 12, 2020. Docs. 191-1; 189-1. He received a single response on May 18, 2020, indicating that his request would not be considered unless it was resubmitted citing a BOP recognized basis for release. Doc. 191-2. Each of Saenz's requests was submitted more than thirty days ago.

A debate exists between the parties and among some district courts as to whether a response from the warden alters the thirty-day waiting period and triggers the need to pursue administrative appeals or if the defendant may instead move the district court directly. Some courts have read the thirty-day bypass provision to allow a court to consider a motion brought by a defendant after "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility," to mean that such motion may be brought if thirty days have passed without a response from the

6

warden. See United States v. Mondaca, No. 89-CR-0655 DMS, 2020 WL 1029024, at *2 (S.D. Cal. Mar. 3, 2020) ("Because more than 30 days have passed without a response from the warden, the Court has jurisdiction to hear the motion."); United States v. Brown, 411 F. Supp.3d 446, 452 (S.D. Iowa Oct. 8, 2019) ("Exhaustion occurs when the BOP denies a defendant's application or lets thirty days pass without responding to it."); United States v. Moravetz, 4:18-cr-40117-KES, Doc. 231 (D.S.D. April 27, 2020) ("[A]n inmate can [bring] a motion for compassionate release directly to the court if the Bureau of Prisons does not act on an inmate's compassionate release motion within 30 days of receipt of the motion, or if the inmate has fully exhausted all administrative right to appeal a failure of the Bureau of Prisons to bring a motion on the inmate's behalf (whichever is earlier)."). Other courts have interpreted the thirty-day provision to allow a court to act on a defendant's motion thirty days after the warden receives the request, even if the warden has denied it and the defendant has not made any attempts to appeal that decision administratively. See United States v. Brown, 4:05-CR-00227-1, 2020 WL 2091802, at *3 (S.D. Iowa Apr. 29, 2020) ("[T]he statute's plain text states only that thirty days must pass after the defendant requests compassionate release from the warden. No more, no less."); United States v. Spears, No. 98-0208-SI-22, 2019 WL 5190877, at *3 (D. Or. Oct. 15, 2019) (finding that the court could rule on a reduction in sentence motion thirty days after the Bureau of Prisons received a request from the defendant, even though the BOP responded to the request before the thirty days had elapsed). Based on the plain language of the statute, this Court will consider Saenz's motion because more than 30 days have passed since the warden received at least one of his compassionate release requests.

**B. Compassionate Release**

In determining whether compassionate release is justified in Saenz's case, this Court must consider the sentencing factors in 18 U.S.C. § 3553(a), determine whether "extraordinary and compelling reasons" warrant a sentence reduction, and evaluate whether a sentence reduction is consistent with the Sentencing Commission's applicable policy statements. See 18 U.S.C. § 3582(c). The sentencing factors found in 18 U.S.C. § 3553(a) instruct this Court to consider the applicable guidelines issued by the Sentencing Commission, "the nature and circumstances of the offense and the history and characteristics of the defendant," the need for the sentence "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," to adequately deter criminal conduct, to protect the public, and "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a). This Court should also consider the need to avoid unwarranted sentence disparities among similarly situated defendants. 18 U.S.C. § 3553(a)(6).

Upon review of the sentencing factors, Saenz's 222-month custody sentence is appropriate. Saenz's calculated guideline range was 188 to 235 months imprisonment. PSR ¶ 88. He pleaded guilty to a serious drug conspiracy charge after multiple prior convictions of drug distribution offenses. Given the nature of the offense and Saenz's personal history, a within-guideline-range sentence, closer to the top of the guidelines such as the one imposed, properly reflects the seriousness of the offense, adequately deters criminal conduct, and protects the public from further crimes by Saenz. The 222-month sentence was sufficient to address the sentencing purposes set forth in § 3553(a)(2), but it was by no means greater than necessary.

The Court must next determine whether "extraordinary and compelling reasons" exist to justify a reduction in Saenz's sentence. Congress has left it to the Sentencing Commission to

8

describe what constitutes "extraordinary and compelling reasons" to justify a sentence reduction under the compassionate release statute. 28 U.S.C. § 994(t). The reasons set forth by the Sentencing Commission include the defendant's terminal illness or debilitating physical or mental condition, the defendant's age in combination with the proportion of his sentence served, and certain family circumstances. U.S.S.G. § 1B1.13 cmt. n.1(A)–(C). The Sentencing Commission also included a "catch all" provision which allows for the necessary finding when "[a]s determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described" above. U.S.S.G. § 1B1.13 cmt. n.1(D). The Sentencing Commission has lacked a quorum since Congress passed the First Step Act which allowed courts to consider compassionate release motions brought by someone other than the Director of the BOP, and therefore has been unable to update these provisions. As a result, district courts have been left to question whether the policy statement still applies and whether courts may consider other extraordinary and compelling reasons under the "catch all" provision when such reasons have not been brought by the Director of the BOP. See Mondaca, 2020 WL 1029024, at *3 (discussing the discord among district courts); Spears, 2019 WL 5190877, at *3 (same); United States v. Brown, 411 F. Supp.3d at 449-50 (same). Many district courts have determined that the discretion given to the Director of the BOP by the Sentencing Commission extends to federal judges and allows them to consider "extraordinary and compelling reason[s] other than" those specifically described. United States v. Condon, No. 3:12-cr-00091-10, 2020 WL 2115807, at *3 (D.N.D. May 4, 2020) (listing cases that found federal judges may apply the "catch all" provision of U.S.S.G. § 1B1.13 comment note 1(D)).

Saenz argues that he qualifies for compassionate release based on either his debilitating physical condition under §1B1.13 comment note 1(A)(ii) or the "other reason" provision of

comment note 1(D). His argument under comment note 1(A)(ii) misses the mark. Comment note 1(A)(ii) provides that extraordinary and compelling reasons exist when "[t]he defendant is (I) suffering from a serious physical or medical condition, (II) suffering from a serious functional or cognitive impairment, or (III) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes" his ability to "provide self-care within the environment of a correctional facility and from which he ... is not expected to recover." U.S.S.G. § § 1B1.13 cmt. n.1(A)(ii). Saenz seems to argue that if he were to contract COVID-19 he would be unable to exercise self-care and that he currently cannot practice the type of socially distanced self-care recommended to protect himself from contracting the illness. Doc. 189 at 14. However, the language of comment note 1(A)(ii) contemplates that the defendant's condition, impairment, or health make him unable to provide self-care in the facility. The notion that Saenz would be unable to practice self-care if he contracts COVID-19 is speculative; because the disease has proven to be mysterious and to impact individuals differently, this Court cannot say with certainty that he would be unable to exercise self-care if he were to contract the disease. Furthermore, Saenz does not argue that it is his condition, impairment or health that keep him from practicing self-care to avoid contracting COVID-19, rather he seems to claim that it is the conditions of confinement keeping him from being able to accomplish that. Therefore, Saenz does not qualify for compassionate release under § 1B1.13 comment note (1)(A)(ii).

With regard to the "other reasons" under comment note 1(D), there can be no doubt that the COVID-19 pandemic and its effects on the nation's economy and society have been extraordinary. Despite the massive disruptions caused by the virus, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its

extensive and professional efforts to curtail the virus's spread." United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020). The question then becomes whether Saenz's age and medical conditions— obesity, esophageal reflux, Barrett's esophagus, gastritis, diverticulitis, anemia, sleep apnea, abdominal pain, and a body mass index between 40.0 and 44.9—combined with the crowded conditions of confinement justify a compassionate release in his case.

It is true that the CDC has recognized that individuals suffering from obesity and who have a body mass index of 30 or higher have an increased risk of developing a severe illness if they contract COVID-19. The CDC however does not list any of Saenz's other diagnosed ailments on its list of underlying medical conditions that place individuals at higher risk. Because COVID-19 is a new disease and so much is still unknown about how it affects individuals, this Court cannot say to what extent Saenz's life is threatened by the existence of COVID-19 in FCI Fort Dix, especially considering the precautions put in place by the BOP to protect him and his fellow inmates. See BOP Implementing Modified Operations, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/covid19_status.jsp (last visited July 14, 2020).

Saenz also points to medical records indicating he may have hypertension and prediabetes and is therefore at higher risk for complications if he contracts COVID-19. Doc. 189 at 10-11. Saenz's BOP medical records confirm that he has had several elevated blood pressure readings. Doc. 188 at 275. While it is true that hypertension is a risk factor for complications of COVID-19, it is not clear that Saenz suffers from hypertension. Hypertension is a medical diagnosis, and this Court will not attempt to diagnose Saenz with hypertension based solely on a few elevated blood pressure readings in his medical records. The physicians treating Saenz's many medical conditions have seen those same numbers and have not made such a diagnosis, despite being in a far better position than this Court to make such a diagnosis. Saenz also points to two A1C readings

11

on his medical charts which are in a prediabetic range to argue that he is at increased risk of complications or death from COVID-19. Doc. 191 at 5. The medical professionals treating Saenz have not given him a diagnosis of prediabetes or diabetes, and this Court is not prepared to find that he suffers from any such condition based only on those two A1C readings.

Saenz has spent roughly ten years in prison and has completed several education programs while in custody, Doc. 188 at 316–17, but that does not justify compassionate release. BOP programs are excellent tools for inmates to learn trades and to build life skills which will help them be successful upon reentry into the community. However, Congress has specifically stated that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason" for compassionate release. 28 U.S.C. 994(t). Because this Court does not consider Saenz's risk for contracting COVID-19 an extraordinary and compelling reason on its own, it likewise does not find that Saenz's efforts toward rehabilitation in combination with the risks posed by COVID-19 constitute the necessary extraordinary and compelling reasons to warrant a sentence reduction.

Because this Court does not find extraordinary and compelling reasons to warrant a sentence reduction for Saenz, this Court need not consider whether such a reduction is in accordance with the Sentencing Commission's remaining policy statements. Accordingly, Saenz's motion for compassionate release is denied at this time.

### C. Eighth Amendment

Saenz also raises an Eighth Amendment argument in his pro se motion. Doc. 184. "It is undisputed that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." Helling v. McKinney, 509 U.S. 25, 31 (1993). An Eighth Amendment claim based on conditions of confinement that are not

formally imposed as part of a defendant's sentence "require proof of a subjective component … the standard for that state of mind is the 'deliberate indifference' standard." Id. at 29–30.

Although the Supreme Court of the United States has said that "prison officials may [not] be deliberately indifferent to the exposure of inmates to a serious, communicable disease on the ground that the complaining inmate shows no serious current symptoms," it does not appear the that BOP or the officials at FCI Fort Dix have been indifferent to the spread of COVID-19 in the facility. Id. at 33. The BOP has taken several steps agency-wide to curtail the spread of COVID-19 and to keep it from entering its facilities from outside sources. It has made efforts, difficult as it may be, to encourage social distancing in its facilities and to screen inmates for COVID-19 while continuing to provide them with all their necessary care. These efforts may not be able to totally prevent the spread of COVID-19 in FCI Fort Dix, but they certainly are not deliberately indifferent to the risks posed by the disease. Saenz remains free to file a Bivens action in the district where he is incarcerated if he believes that he is being subjected to cruel and unusual punishment.

### IV.   Conclusion and Order

For good cause, it is hereby

ORDERED that Saenz's Motion for Relief under the First Step Act, Doc. 184, is denied.

DATED this 29th day of July, 2020.

BY THE COURT:

ROBERTO A. LANGE
CHIEF JUDGE